FILED

2021 Mar-09  PM 03:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **NGM INSURANCE COMPANY,** *a corporation*, | ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) **Case No.: 2:20-cv-00850-AMM** ) |
| **STEVEN VAUGHN CONSTRUCTION, INC.,** *a corporation*; **and STEVEN B. VAUGHN,** *an individual*, | ) ) ) ) ) |
| **Defendants.** | ) ) |

## MEMORANDUM OPINION AND ORDER

This case is before the court on Plaintiff NGM Insurance Company's ("NGM") Amended Motion for Default Judgment. Doc. 20. NGM filed this action to enforce Steven Vaughn Construction, Inc. and Steven B. Vaughn's (collectively, "the Defendants") alleged contractual obligation to indemnify NGM as the surety of a series of Performance and Payment Bonds. Doc. 11. For the reasons explained below, NGM's motion is **GRANTED IN PART** and **DENIED IN PART** and a default judgment against the Defendants is **ENTERED**.

## I.    BACKGROUND

### A. Factual Allegations

NGM is in the insurance and bonding business. Doc. 11 ¶ 1. NGM issued a series of Performance and Payment Bonds to cover the "New Facilities for Mobile Community Corrections" for Mobile County, Alabama and "East Gadsden Community Center" for the City of Gadsden, Alabama (collectively, "the Bonded Projects"). *Id.* ¶ 6. Prior to the issuance of the bonds, the Defendants "separately and severally, executed an indemnity agreement in favor of NGM" in which the Defendants agreed to "exonerate, hold harmless, indemnify and keep indemnified" NGM "from and against any and all claims, demands and liability for losses, costs and expenses of whatsoever kind or nature, including court costs, counsel fees, investigative costs, and from and against any and all other such losses and expenses which [NGM] may sustain or incur[.]" *Id.* ¶¶ 7–9. The Defendants agreed that NGM was "entitled to reimbursement for any and all disbursements made by it in good faith," as well as "interest on all disbursements . . . at the maximum rate permitted by law calculated from the date of each disbursement." *Id.* ¶ 9.

Steven Vaughn Construction, Inc. abandoned the Bonded Projects and was declared to be in default by the City of Gadsden, Alabama on July 15, 2019, and by Mobile County, Alabama on July 31, 2019. *Id.* ¶¶ 11–12. NGM has "made arrangements for the completion of the Bonded Projects in accordance with the terms

of its Performance Bonds and applicable law." *Id.* ¶ 14. As of the date of the filing of its Second Amended Complaint, "NGM ha[d] incurred losses and expenses . . . total[ing] $2,934,311.00 to satisfy claims against the Bonds that NGM issued on [Steven Vaughn Construction, Inc.'s] behalf on the Bonded Projects." *Id.* ¶ 32. Accordingly, in its Second Amended Complaint, NGM requested reimbursement "in the amount of $2,934,311.00, plus all future losses NGM may incur, plus other relief permitted by law, all costs of this action, and all attorney's fees incurred by NGM resulting from the issuance of the Bonds." *Id.* ¶¶ 23–33.

In NGM's amended motion for a default judgment, it asserts that "NGM has incurred losses of $4,344,570.70 on the Bonded Projects." Doc. 20-1 ¶ 15. Additionally, in that motion, NGM asserts that it "has incurred attorney's fees, consultant's fees, costs and expenses totaling $120,816.28." *Id.* ¶ 16. NGM moves the court to enter a judgment against the Defendants for $4,465,386.98, "plus post judgment interest calculated at .09% interest." Doc. 20 at 2.

### B. Procedural History

On June 29, 2020, NGM filed its Second Amended Complaint against the Defendants, alleging three counts: (1) Claim for Reimbursement, (2) Exoneration and Specific Performance, and (3) Request for Preliminary Injunction. Doc. 11. On August 4, 2020, a process server served the Defendants with the summons and complaint at a McDonald's Restaurant in Southside, Alabama. Docs. 12–13. The

return of service forms for the Defendants both noted that, on June 17, 2020 and July 1, 2020, "[t]wo attempts [were] made on [Mr. Vaughn's] home address . . . [but his] wife said he was not home . . . [and that] he did not live at that address." *Id*. Therefore, on August 4, 2020, the process server "established a surveillance position," and "[f]ollowed [Mr. Vaughn] as he passed his surveillance position to McDonalds restaurant where he was served at 7:30AM as he sat in his 2018 Tacoma." *Id*. The Defendants' responsive pleadings were due to be filed by August 25, 2020, *see id*., but neither of the Defendants filed their answers to the Second Amended Complaint, nor did they ever appear in the case.

On August 26, 2020, the day after the Defendants' answers were due, NGM filed a Motion for Clerk's Entry of Default. Doc. 14. The following day, the Clerk of Court entered a default for each of the Defendants. Doc. 15. On September 8, 2020, NGM moved for the entry of a default judgment against the Defendants. Doc. 16. The court ordered NGM to supplement its motion "to clarify the specific amount of damages requested." Doc. 17. On September 30, 2020, NGM filed an amended motion for a default judgment against the Defendants. Doc. 18. The court set NGM's amended motion for a default judgment for a telephonic hearing on February 9, 2021. Doc. 19. On February 12, 2021, NGM filed a second amended motion for default judgment. Doc. 20.

In support of its second amended motion for a default judgment, NGM filed a copy of the Agreement of Indemnity entered into by NGM and the Defendants, Doc. 20-2, a demand letter sent from NGM to the Defendants, Doc. 20-3, and copies of Tender and Release Agreements concerning the bonded construction projects, Docs. 20-4 and 20-5. To support its claim for damages under the indemnity agreement, NGM also provided the affidavit of a Bond Claims Manager at NGM, Doc. 20-1, and documentation of payments made by NGM on the Bonded Projects and in litigating this matter, Docs. 20-6, 20-7, and 20-8.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 55, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After entry of the clerk's default, if the defendant is not an unrepresented infant or a legally incompetent person, the plaintiff can apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). Before entering a default judgment, the court may conduct hearings if it needs to "conduct an accounting; . . . determine the amount of damages; . . . establish the truth of any allegation by evidence; or . . . investigate any other matter." *Id*. "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

"A motion for default judgment is not granted as a matter of right." *Glennon v. Rosenblum*, 325 F. Supp. 3d 1255, 1261 (N.D. Ala. 2018) (quoting *Pitts ex rel. Pitts v. Seneca Sports, Inc.*, 321 F.Supp.2d 1353, 1356 (S.D. Ga. 2004) (internal footnote omitted)). A court's entry of a default judgment "is only warranted when there is 'a sufficient basis in the pleadings for the judgment entered.'" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).[1] The Eleventh Circuit has interpreted "a sufficient basis" for the judgment as "being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Id.* (citing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim.")). "In addition to the pleadings, a court may consider evidence presented in the form of an affidavit or declaration. *Glennon*, 325 F. Supp. 3d at 1261 (citing *Frazier v. Absolute Collection Serv., Inc.*, 767 F.Supp.2d 1354, 1362 (N.D. Ga. 2011)). Further, a defaulting defendant "admits the plaintiff's well-pleaded allegations of fact" for purposes of liability. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

---

[1] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981).

### III.   ANALYSIS

#### A. Subject Matter Jurisdiction

Before the court enters a default judgment, the court first must ensure that it has subject matter jurisdiction over the case. *Glennon*, 325 F. Supp. 3d at 1262. In the Second Amended Complaint, NGM asserts that the court may exercise jurisdiction over the claims "pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the matter in controversy is between citizens of different states." Doc. 11 ¶ 4.

In its Second Amended Complaint, NGM asserts that the Defendants are liable for contractual damages of at least $2,934,311.00. *Id.* ¶ 32. Based on this factual allegation, the court is satisfied that more than $75,000 is in controversy.

As to the requirement of complete diversity between the parties, NGM alleges that it "is a corporation organized and existing under the laws of the State of Florida," with "its principal place of business in the State of Florida." *Id.* ¶ 1. Steven Vaughn Construction, Inc. "is a corporation organized and existing under the laws of the State of Alabama," with "its principal place of business in the [State of] Alabama." *Id.* ¶ 2. And, Steven B. Vaughn is an "adult citizen of the State of Alabama." *Id.* ¶ 3. After reviewing the Second Amended Complaint, the court determines that the parties are completely diverse, and the court therefore has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332.

### B. Personal Jurisdiction

To enter a valid default judgment, the court also must determine that it has personal jurisdiction over the defendant. *Glennon*, 325 F. Supp. 3d at 1263 (citing *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11th Cir. 2009)). Under Rule 4 of the Federal Rules of Civil Procedure, "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A).

NGM alleges that Steven B. Vaughn "is a competent, adult citizen of the State of Alabama, whose address for service of process is 4296 Fowlers Ferry Road, Southside, Alabama 35907." Doc. 11 ¶ 3; *see also* Doc. 20 ¶ 2. Additionally, NGM alleges that Steven B. Vaughn is the "registered agent for service of process for . . . Steven Vaughn Construction, Inc." Doc. 20 ¶ 3. The Agreement of Indemnity also provides that "[e]ach INDEMNITOR is the agent for all INDEMNITORS for the purpose of accepting service of any process in the jurisdiction on which the INDEMNITORS accepting the process resides, is domiciled, is doing business or is found." Doc. 11, Ex. A; Doc. 20-2 at 5. Further, NGM alleges that Steven Vaughn Construction, Inc. "is a corporation organized and existing under the laws of the State of Alabama, and having its principal place of business in Southside, Alabama." Doc. 11 ¶ 2. The record indicates that the Defendants were served on August 4, 2020,

at a McDonald's Restaurant in Southside, Alabama. Docs. 12–13. Therefore, the court is satisfied that it has personal jurisdiction over the in-state defendants Steven B. Vaughn and Steven Vaughn Construction, Inc.

### C. Liability

NGM asserts two theories of recovery—the right to reimbursement and the equitable right to exoneration and specific performance. Doc. 11 ¶¶ 23–48. Additionally, NGM's Second Amended Complaint requests a preliminary injunction. *Id.* ¶¶ 49–63.

"A federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits." *O'Neal v. Kennamer*, 958 F.2d 1044, 1046 (11th Cir. 1992). "Alabama applies the traditional doctrine[] of *lex loci contractus* to contract claims. . . . Th[is] doctrine states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction." *Colonial Life & Acc. Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004) (citation and internal quotations marks omitted).

Here, the Agreement of Indemnity does not specify that the agreement would be governed by the law of a specific state, nor did NGM allege where the contract was made. *See* Doc. 11, Ex. A. NGM did allege that the Performance and Payment Bonds were issued in Alabama and that both of the Bonded Projects were located in

9

Alabama. *Id*. ¶ 23. It also appears as though both of the Defendants executed the Agreement of Indemnity in the State of Alabama. *Id.*, Ex. A. The indemnitor Defendants were bound by the Agreement of Indemnity by its terms upon signing the agreement. *Id.* ("The corporation signing below as INDEMNITOR agrees to be bound by the terms of the Agreement of Indemnity of the SURETY. . . . The individual signing below as INDEMNITOR agrees to be bound by the terms of the Agreement of Indemnity of the SURETY. . . .). Therefore, the court finds that the law of the state of Alabama should apply, as the agreement was likely made in Alabama. *See, e.g., Old Republic Sur. Co. v. Mike Mooney Constr.*, No. 2:06-cv-112-TMP, 2006 WL 8437364, at *3 (N.D. Ala. Dec. 8, 2006). *Cf. Genesco Employees' Credit Ass'n v. Cobb*, 411 So. 2d 151, 153 (Ala. Civ. App. 1982).

"Under Alabama law, a surety's right of reimbursement . . . for losses incurred on bonded obligations is established in a number of ways—by common law, contract, and statute." *Hanover Ins. Co. v. Hudak & Dawson Const.*, 946 F. Supp. 2d 1208, 1218–19 (N.D. Ala. 2013). Here, NGM's request for reimbursement is brought "[b]y virtue of common law and of the terms of the Agreement of Indemnity." Doc. 11 ¶ 33.

The Alabama Supreme Court has held that a surety is entitled to reimbursement from a principal "[w]hen [the] surety satisfies the principal's obligation." *SouthTrust Bank of Ala., N.A. v. Webb–Stiles, Co., Inc.*, 931 So.2d 706,

712 (Ala. 2005). The Alabama Supreme Court also has held that a surety and principal may enter into an express contract that provides the terms under which the surety is entitled to indemnification. *See Searcy v. Shows*, 204 Ala. 218, 220 (1920) ("[I]n the absence of an express agreement the law implies a promise of indemnity on the part of the principal. Yet, by express contract, such right of action for indemnity against the principal may be given before the [surety's] payment of the debt.") (internal citations omitted).

Federal courts applying Alabama law have held that common law indemnity is not available when the parties have an express agreement of indemnity. *See Hanover Ins. Co.*, 946 F. Supp. 2d at 1218–19 ("Here, however, because the parties entered into Agreements of Indemnity, Plaintiff may not rely on a common law theory of indemnification."); *Companion Prop. & Cas. Ins. Co. v. Greaves-Walker, Inc.*, No. 13-00298-KD-N, 2013 WL 6442767, at *4 (S.D. Ala. Dec. 10, 2013) ("However, there is a general line of cases wherein the courts have found that common law indemnity or implied theories of indemnity are not available when the parties have a specific indemnification agreement. . . ."); *RBC BANK U.S. v. Holiday Isle, LLC*, No. 09-0038-WS-C, 2010 WL 447403, at *1 (S.D. Ala. Feb. 5, 2010) (applying the rule "that parties' rights to common law indemnity are cut off where those parties enter into an express indemnity agreement") (internal quotation marks omitted). Accordingly, the court will consider only the theory of contractual

indemnity in determining whether NGM has pleaded sufficient facts to support its claim for reimbursement. *See Parker Towing Co., Inc. v. Triangle Aggregates, Inc.*, 143 So.3d 159, 169 n.9 (Ala. 2013) ("Of course, as this Court has previously noted, '[t]hough [the plaintiff] pleaded different theories of indemnification recovery, *i.e.*, contract and common law, by definition it may still receive only one recovery for indemnification.'" (quoting *North Alabama Elec. Coop. v. New Hope Tel. Coop.*, 7 So.3d 342, 345 (Ala.2008))).

"When construing an indemnity agreement, [the Alabama Supreme] Court has applied general rules of contract interpretation." *Once Upon a Time, LLC v. Chappelle Props., LLC*, 209 So. 3d 1094, 1097 (Ala. 2016). That Court has found that "unless the terms of the indemnity clause are in some way ambiguous, we are required to enforce it as it is written." *Doster Constr. Co., Inc. v. Marathon Elec. Contractors, Inc.*, 32 So.3d 1277, 1283 (Ala. 2009). Under Alabama rules of contract interpretation, "[a] contractual provision is ambiguous if it is reasonably susceptible of more than one meaning." *Id.* (quoting *FabArc Steel Supply, Inc. v. Composite Constr. Sys., Inc.*, 914 So.2d 344, 357 (Ala. 2005)). Further, "[i]f the court determines that the terms are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written." *Once Upon a Time, LLC*, 209 So. 3d at 1097

(internal quotation marks omitted) (quoting *Homes of Legend, Inc. v. McCollough*, 776 So.2d 741, 746 (Ala. 2000)).

Under the Agreement of Indemnity, in exchange for NGM issuing a series of Performance and Payment Bonds, the Defendants "jointly and severally" agreed to

> exonerate, hold harmless, indemnify and keep indemnified the SURETY from and against any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including court costs, counsel fees, investigative costs, and from and against any and all other such losses and expenses which the SURETY may sustain or incur . . . [b]y reason of having executed or procured the execution of Bonds[.]

Doc. 11 ¶¶ 6, 9, Ex. A. The unambiguous terms of the Agreement of Indemnity established that the Defendants agreed to indemnify NGM from any and all losses, costs, and expenses including attorney's fees and investigative costs sustained by NGM by reason of having executed the Bonds. Accordingly, the court finds that the Agreement of Indemnity is effective and enforceable against the Defendants.

Moreover, the court finds that the facts alleged in NGM's Second Amended Complaint are sufficient to allege a breach of the Agreement of Indemnity against the Defendants under Alabama law. "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff['s] performance under the contract; (3) the defendant[s'] nonperformance; and (4) resulting damages." *Dupree v. PeoplesSouth Bank*, 308 So.3d 484, 490 (Ala. 2020) (internal quotation marks omitted). NGM supports its allegations of a binding

contract with the Defendants by attaching a copy of the Agreement of Indemnity executed by the Defendants. Doc. 11, Ex. A. NGM also asserts that it issued the Performance and Payment Bonds. *Id*. ¶ 23. Therefore, NGM pleaded facts that satisfy the element of performance.

Additionally, NGM asserts that, as a result of the Defendants' abandonment of the Bonded Projects and declared default of the same, NGM "made arrangements for the completion of the Bonded Projects in accordance with the terms of its Performance Bonds and applicable law," *id*. ¶ 27, and incurred losses, attorney's fees, consultant's fees, costs, and expenses, *id.* ¶¶ 28–32. Specifically, NGM asserts that it incurred actual damages in the form of losses of $4,344,570.70 on the Bonded Projects, Doc. 20-1 ¶ 15, and incurred $120,816.28 in attorney's fees, consultant's fees, costs, and expenses, *id.* ¶ 16. NGM further asserts that the Defendants' indemnity obligations to NGM under the Agreement of Indemnity were triggered, but the Defendants "failed . . . and otherwise refused to perform their obligations to NGM as specified by the Agreement of Indemnity." Doc. 11 ¶¶ 10, 16. Accordingly, the court finds that NGM has adequately pleaded a claim for breach of contract against the Defendants under Alabama law.[2]

---

[2] NGM does not include a request for injunctive relief in its motion for a default judgment. *See* Doc. 20. Because NGM sought and is entitled to a default judgment only on its claim for reimbursement under the Agreement of Indemnity, NGM's original request for a preliminary injunction, Doc. 11 ¶¶ 49–63, is **DENIED AS MOOT**.

### D. Damages

Although a defaulted defendant admits well-pleaded allegations of liability, "allegations relating to the amount of damages are not admitted by virtue of default." *Glennon*, 325 F. Supp. 3d at 1268 (quoting *PNCEF, LLC v. Hendricks Bldg. Supply, LLC*, 740 F. Supp. 2d 1287, 1292 (S.D. Ala. 2010)). When assessing damages, a district court must "assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). An evidentiary hearing may be necessary to determine the amount of damages, but if the record is sufficient, a district court may determine damages without a hearing. *See Sec. & Exch. Comm'n v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

NGM requests that the court enter a default judgment in its favor against the Defendants in the amount of $4,465,386.98, plus post-judgment interest. Doc. 20. To support its claim for damages, NGM provided the affidavit of Eli Cinq-Mars, a Bond Claims Manager for NGM, Doc. 20-1 ¶ 1, and copies of cancelled checks showing payments made by NGM on the Bonded Projects and in litigating this matter, Docs. 20-6, 20-7, 20-8. The Agreement of Indemnity between NGM and the Defendants provides that, "[i]n the event of any payment by the SURETY, the INDEMNITORS further agree that . . . the vouchers or other evidence of any such payments made by the SURETY shall be prima facie evidence of the fact and amount of the liability to the SURETY." Doc. 20-2 at 3. Therefore, the Cinq-Mars Affidavit

and the copies of NGM's cancelled checks constitute *prima facie* evidence of the fact and amount of the Defendants' liability. *See Am. S. Ins. Co. v. KHDM Constr., LLC*, No. 2:19-cv-185-ECM, 2019 WL 5280959, at *2 (M.D. Ala. Oct. 17, 2019) (citing *Travelers Cas. & Sur. Co. of Am. v. Winmark*, 518 F. App'x 899, 903 (11th Cir. 2013) ("By signing the indemnity agreement, the [defendants] expressly agreed that computer printouts, verified by affidavit, would be *prima facie* evidence of the fact and amount of loss.")).

The Cinq-Mars Affidavit provides that NGM made payments on the Bonded Projects, attorney's fees, consultant fees, costs, and expenses incurred "in the investigation, defense and settlement of the aforementioned claims and in the enforcement of defendants' obligations under the Agreement of Indemnity," Doc. 20-1 ¶¶ 15–16, and NGM provided copies of its cancelled checks for those payments, Docs. 20-6, 20-7, 20-8. Because the Agreement of Indemnity specifically provides that the Defendants "jointly and severally" agreed to indemnify NGM "from and against any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including court costs, counsel fees, investigative costs, and from and against all other such losses and expenses which [NGM] may sustain or incur[,]" Doc. 11, Ex. A; Doc. 20-2, NGM is entitled to recover damages for such losses, attorney's fees, consultant's fees, costs, and

expenses. *See, e.g., W. Sur. Co. v. Hurst*, No. 2:19-cv-01273-MHH, 2020 WL 554453, at \*3 (N.D. Ala. Feb. 4, 2020).

Because the Agreement of Indemnity states that the Defendants will indemnify NGM for "losses, costs, and expenses of whatsoever kind or nature, including court costs, counsel fees, investigative costs," Doc. 20-2 at 3, and that "[i]n the event [NGM] shall file suit at law or in equity to enforce the terms of this Agreement, [NGM] shall be entitled to recover its own attorneys' fees and expenses in connection with such suit," *id.* at 5, this case does not present a "circumstance where the Court must determine the reasonableness of the attorney's fees or expenses as is the case where the parties agreed to be responsible for a 'reasonable' attorney's fees or 'reasonable' expenses," *Gray Cas. & Sur. Co. v. McConnell Contracting, LLC*, No. 11-0184-KD-N, 2012 WL 1145186, at \*4 (S.D. Ala. Apr. 5, 2012). Here, the Defendants entered into the Agreement of Indemnity, which does not require a determination as to the reasonableness of attorney's fees or expenses.

However, Federal Rule of Civil Procedure 54 provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). NGM's Second Amended Complaint requests "judgment against the [D]efendants, separately and severally, in the amount of $2,934,311.00, plus all future losses NGM may incur, plus other relief permitted by law, all costs of this action, and all attorney's fees incurred by NGM resulting from

17

the issuance of the Bonds, together with such further and different relief to which NGM, as surety, is entitled." Doc. 11 at 10–11. In NGM's second amended motion for a default judgment, NGM requests "judgment in its favor against [the D]efendants . . . in the amount of Four Million Four Hundred Sixty-Five Thousand Three Hundred Eighty-Six and 98/100 Dollars ($4,465,386.98)." Doc. 20 at 1. NGM's request for an award of $4,465,386.98 indicates that after the Second Amended Complaint was filed on June 29, 2020, in which pleading NGM requested an award of $2,934,311.00, NGM incurred additional losses, fees, costs and expenses totaling $1,531,075.98.

NGM provided the court with copies of the following checks dated after the filing of the Second Amended Complaint on June 29, 2020, representing payments on the Bonded Projects:

| United Rentals, Inc. | $7,784.98 |
|---|---|
| Rob't J. Baggett, Inc. | $348,963.45 |
| Rob't J. Baggett, Inc. | $23,237.00 |
| Pot O Gold | $465.93 |
| Rob't J. Baggett, Inc. | $186,190.49 |
| Rob't J. Baggett, Inc. | $12,517.79 |
| Rob't J. Baggett, Inc. | $18,235.61 |
| Rob't J. Baggett, Inc. | $20,954.62 |
| Rob't J. Baggett, Inc. | $18,235.61 |
| Bob Smith Construction, Inc. | $120,000.00 |
| Sauls Mechanical d/b/a Sauls Plumbing | $22,000.00 |

Doc. 20-1 at 7–8. These checks indicate that after the Second Amended Complaint was filed on June 29, 2020, NGM incurred additional losses on the Bonded Projects in the amount of $1,342,782.08.

NGM also provided the court with copies of the following checks dated after the filing of the Second Amended Complaint on June 29, 2020, representing NGM's payments of its attorney's fees, consultant's fees, costs, and expenses:

| The Law Office of Brian A. Dodd | $2,672.50 |
|---|---|
| The Law Office of Brian A. Dodd | $1,098.00 |
| Boudwin Consulting Inc. | $1,691.25 |
| Boudwin Consulting Inc. | $783.75 |
| The Law Office of Brian A. Dodd | $2,655.00 |
| The Law Office of Brian A. Dodd | $922.50 |
| Boudwin Consulting Inc. | $783.75 |
| Boudwin Consulting Inc. | $2,145.00 |
| The Law Office of Brian A. Dodd | $360.00 |
| Boudwin Consulting Inc. | $1,320.00 |
| The Law Office of Brian A. Dodd | $427.50 |

Doc. 20-8 at 21–31. These checks indicate that after the Second Amended Complaint was filed on June 29, 2020, NGM incurred additional fees, costs, and expenses in the amount of $14,859.25.

The copies of NGM's cancelled checks that are attached to the amended motion for a default judgment show that the payments NGM made on the Bonded Projects ($1,342,782.08) and on fees, costs, and expenses ($14,859.25) after the Second Amended Complaint was filed on June 29, 2020, total $1,357,641.33. Therefore, those checks do not support NGM's assertion that it incurred additional

losses, fees, costs and expenses totaling $1,531,075.98 after the Second Amended Complaint was filed on June 29, 2020. *See supra* at p. 18.

NGM's Second Amended Complaint requests "$2,934,311.00, plus all future losses . . . , plus other relief permitted by law, all costs of this action, and all attorney's fees incurred by NGM." Doc. 11 at 10–11. In the Second Amended Complaint, NGM alleged that it incurred losses of $2,828,065.00, as of June 29, 2020. Doc. 11 ¶ 30. The Cinq-Mars Affidavit attached to NGM's second amended motion for a default judgment alleges that NGM has incurred losses of $4,344,570.70. Doc. 20-1 ¶15. This suggests that between June 29, 2020, and the date of filing of the second amended motion for a default judgment on February 12, 2021, NGM incurred additional losses of $1,516,505.70.  But the checks dated after June 29, 2020 that were submitted with the second amended motion for a default judgment indicate that NGM incurred additional losses totaling $1,342,782.08. There is a $173,723.62 discrepancy between the additional losses alleged in the affidavit and the additional losses shown in the corresponding checks. This discrepancy in the amount of additional losses is similar to the $173,434.65 discrepancy between the total amount of payments for losses, fees, costs and expenses made after June 29, 2020, as suggested in the second amended motion for a default judgment and affidavit ($1,531,075.98), and the total amount of payments for losses, fees, costs and expenses made after June 29, 2020, as shown in the

corresponding checks ($1,357,641.33). Therefore, it appears as though the discrepancy is likely due to an error in NGM's original calculation of its losses in NGM's Second Amended Complaint.

Because a default judgment award must not exceed what NGM demanded in its pleading, *see* Fed. R. Civ. P. 54(c), the court will award NGM the amount requested in its Second Amended Complaint ($2,934,311.00), plus the additional losses, costs, and fees that NGM incurred after the filing of the Second Amended Complaint on June 29, 2020. Doc. 11. The checks attached to NGM's second amended motion for a default judgment indicate that after June 29, 2020, NGM incurred losses, fees, costs and expenses totaling $1,357,641.33. Docs. 20-6, 20-7, 20-8. Accordingly, NGM is entitled to damages in the amount of $4,291,952.33.

Finally, NGM seeks "post judgment interest calculated at .09% interest." Doc. 20 at 2. NGM's Second Amended Complaint requests "judgment against the [D]efendants, separately and severally, in the amount of $2,934,311.00, . . . plus other relief permitted by law, . . . together with such further and different relief to which NGM, as surety, is entitled." Doc. 11 at 10–11. The Agreement of Indemnity specifically provides that, as surety, NGM is entitled to payment of "interest on all disbursements made by [NGM]." Doc. 11, Ex. A; Doc. 20-2 at 3. During the telephonic hearing on the motion for a default judgment, *see* Doc. 19, NGM expressly waived any award of prejudgment interest that it may have been entitled

to under the Agreement of Indemnity. Under 28 U.S.C. § 1961, "[i]nterest [is] allowed on any money judgment in a civil case recovered in a district court." Accordingly, NGM is awarded post-judgment interest in accordance with 28 U.S.C. § 1961, and future fees, costs, and expenses incurred in this matter, including costs of future collection efforts and attorneys' fees.

## IV.   CONCLUSION

Accordingly, NGM's motion for a default judgment against the Defendants, Doc. 20, is **GRANTED IN PART** and **DENIED IN PART** and a default judgment is **ENTERED** against the Defendants. Per NGM's motion, the court awards NGM $4,291,952.33 in damages, plus post-judgment interest in accordance with 28 U.S.C. § 1961, and future fees, costs, and expenses incurred in this matter, including costs of future collection efforts and attorneys' fees. The court will enter a separate final judgment.

**DONE** and **ORDERED** this 9th day of March, 2021.

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE